UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

RIFENBURG CONSTRUCTION, INC.                                                                                   PLAINTIFF

v.                                                                                    CIVIL ACTION NO. 3:12cv813-DPJ-FKB

HATCH MOTT MCDONALD, LLC, et al.                                                                         DEFENDANTS

ORDER

This diversity case is before the Court on Defendants' Motion to Dismiss First Amended Complaint [20]; Defendants' Motion to Compel Arbitration and to Dismiss [30]; and Plaintiff's Motion to Amend [35]. For the reasons that follow, the motions to dismiss and compel arbitration are denied and the motion to amend is granted.

I.      Facts and Procedural History

On August 16, 2010, Plaintiff Rifenburg Construction, Inc., entered into a construction contract with the Jackson Municipal Airport Authority ("JMAA") for the rehabilitation of the east runway at Jackson-Medgar Wiley Evers International Airport. Rifenburg served as the general contractor on the project. JMAA had separately retained Defendant Hatch Mott McDonald, LLC ("HMM") to serve as the project's engineer. Defendants Curtis M. Wright and Heath Jenkins served as HMM's Project Manager and Project Engineer on the JMAA project. JMAA ultimately terminated Rifenburg. *See* Proposed Second Am. Compl. [27-2] ¶ 35.

On December 4, 2012, Rifenburg filed this lawsuit against HMM, Wright, and Jenkins, alleging claims for negligence and misrepresentation and seeking an award of compensatory and punitive damages. Compl. [1]. Defendants moved to dismiss, and Rifenburg sought and was granted leave to file an amended complaint. Rifenburg filed its Amended Complaint on March 1, 2013, again raising negligence and negligent misrepresentation claims and asserting claims for

compensatory and punitive damages.  Am. Compl. [18].  Defendants again moved to dismiss [20], and in response, Rifenburg asked for leave to amend its complaint for a second time and attached a proposed Second Amended Complaint.[1]  Pl.'s Resp. [27].  In rebuttal, Defendants explained that they "have no objection to Plaintiff's request for leave to file the proposed Second Amended Complaint" and conceded that, as to certain claims, the proposed Second Amended Complaint "appears to plead sufficient facts, if accepted as true, to state actionable claims."  Defs.' Rebuttal [29] at 1–2.  Thereafter, Defendants filed their Motion to Compel Arbitration [30].  The Court ordered additional briefing on several issues [36].  The matters raised by the parties have now been fully briefed, and the Court has subject-matter and personal jurisdiction and is prepared to rule.

II.     Analysis

    A.      Motion to Amend

Federal Rule of Civil Procedure 15(a)(2), which governs amendments other than those available "as a matter of course," provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and explains that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see id.* R. 15(a)(1) (covering amendments "as a matter of course").  HMM has consented to the amendment.  The motion to amend is therefore granted, and Rifenburg is directed to file its Second Amended Complaint within seven days of the entry of this Order.

    B.      Motion to Compel Arbitration

"When considering a motion to compel arbitration, the court must determine:  (1) whether

---

[1]Rifenburg has since separately docketed its Motion to Amend [35].

a valid agreement to arbitrate exists between the parties, and (2) whether the dispute at issue falls within the scope of that agreement." *Grant v. Houser*, 469 F. App'x 310, 314 (5th Cir. 2012). The first question "is governed by ordinary state-law contract principles," and "the strong federal policy favoring arbitration does not apply." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (citations omitted). At step two of the analysis, the Court "appl[ies] the federal policy and resolve[s] ambiguities in favor of arbitration." *Id.* (citation omitted). If the Court concludes that a valid agreement to arbitrate exists and the subject dispute is within its scope, the Court may consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (cited in *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)).

This case presents a somewhat unusual scenario at the first step in the arbitrability analysis because there is no agreement to arbitrate between Rifenburg and HMM. Defendants nevertheless contend that Rifenburg's claims against HMM are subject to binding arbitration under HMM's contract with JMAA through application of direct-benefit estoppel. But before the Court can reach the direct-benefit estoppel issue—and whether HMM waived it—it must first determine whether a valid agreement to arbitrate existed between HMM and JMAA, applying ordinary principles of contract interpretation. More precisely, the Court must determine whether the contract mandated binding arbitration or merely allowed the parties to elect arbitration.

The Fifth Circuit has explained that this inquiry is properly viewed at the first step of the analysis. *Klein*, 710 F.3d at 237 (explaining that "[t]hough this question may not fall naturally into either step, the nature of the inquiry indicates that it is more appropriately analyzed under

3

step one" and noting that "[a]n agreement that allows for disputes to be resolved through either an arbitral or a judicial forum can hardly be considered a 'valid agreement to arbitrate'").

Finding that HMM's motion must be decided at step one is significant because the presumption in favor of arbitration does not apply. Instead, the Court examines the contract under the Mississippi rules of contract construction. *Klein*, 710 F.3d at 236. And as such, the Court must determine the intent of the parties, focusing "upon the objective fact—the language of the contract." *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001) (citation omitted). "[I]t is not the function of the courts to make contracts for parties, but rather to give effect to them as written . . . [and] to adhere to the principle so deeply embedded in our jurisprudence that the plain and unambiguous language of a contract should be construed as written." *Vulcan Materials Co. v. Miller*, 691 So. 2d 908, 912 (Miss. 1997) (citations omitted).

With these preliminaries addressed, the Court turns to the arbitration provision in the contract between JMAA and HMM. That contract provides in pertinent part:

> 18.1. <u>Nonbinding Mediation</u>. Unless mutually agreed otherwise, JMAA and [HMM] shall submit all disputes and other matters in question or controversy between JMAA and [HMM] *involving an amount of less than $1,000,000* to nonbinding mediation. If JMAA and [HMM] *are unable to settle* any dispute or other matter in question or controversy through nonbinding mediation, the dispute or other matter in controversy *shall be* submitted for arbitration in accordance with Paragraph 18.2 of this Agreement.
>
> 18.2. <u>Arbitration</u>. All claims, disputes, and other matters in controversy or question between JMAA and [HMM] arising out of or relating to this Agreement *and* submitted to arbitration shall be decided by a single arbitrator mutually acceptable to JMAA and [HMM] in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association . . . .

Contract [30-2] at 19 (emphasis added).

There is no doubt that these provisions mandate non-binding mediation of claims for less

than $1,000,000 followed by binding arbitration if mediation fails. But the claim here greatly exceeds that sum, begging the question whether arbitration is still mandatory. HMM contends that it is, relying first on Article 18.1. According to HMM, if mediation fails or is not attempted for a claim above $1,000,000, "such a dispute 'shall be submitted to arbitration . . . .'" Defs.' Supp. Mem. [38] at 3, 4 (quoting Art. 18.1). But this interpretation ignores the predicate to the clause HMM quotes. Read literally, the only claims that "shall be submitted to arbitration" are claims for less than $1,000,000 for which mediation failed. Contract [30-2] at 19, Art. 18.1. Article 18.1 makes no reference to claims exceeding that amount or claims that have never been submitted to mediation. Simply put, the provision does not mandate any particular forum for resolving disputes involving more than $1,000,000.

HMM alternatively asserts that, "[a]t any rate, Article 18.2 <u>requires</u> that all claims, disputes, and other matters in controversy be submitted to arbitration." Defs.' Supp. Mem. [38] at 3. This argument also misses the mark. Article 18.2 states that controversies between the parties "relating to this Agreement *and* submitted to arbitration shall be decided by a single arbitrator." Contract [30-2] at 19 (emphasis added). Use of the word "and" suggests the option to pursue arbitration, and nowhere does Article 18.2 state that controversies exceeding $1,000,000 "must be" or "shall be" submitted to arbitration. Article 18.2 does nothing more than specify the parameters under which claims that are submitted to arbitration shall be decided; it does not itself "require" arbitration of all disputes.

Because Rifenburg seeks "compensatory damages of at least $7,000,000.00" as well as punitive damages, the dispute between the parties exceeds $1,000,000 and is therefore not subject to nonbinding mediation and arbitration under the arbitration provision. Because there

was no valid agreement to arbitrate disputes in excess of $1,000,000, the motion to compel arbitration is denied.[2]

      C.      Motion to Dismiss

           1.      Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

           2.      Analysis

Defendants concede that the Second Amended Complaint contains legally sufficient allegations to survive their motion to dismiss as to the contract-based-negligence claims and the negligent-misrepresentation claims. But they assert that, even as re-pleaded, Rifenburg's negligence claim "predicated on the alleged breach of common law (extra-contractual) duties"

---

[2]Because the Court reaches this conclusion, it need not address whether HMM waived its direct-benefit-estoppel argument, which presents a close call.

fails as matter of Mississippi law and is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).  Defs.' Rebuttal [29] at 2.

Specifically, Defendants argue that "in order to state a claim against a design professional (such as [HMM]), Mississippi law requires a third party contractor (such as Rifenburg) to show that the design professional breached its contract with the project owner (JMAA)."  Defs.' Mem. [21] at 7.  This is because, according to Defendants, "Mississippi law has clearly established that any duty owed by a design professional, such as an engineer, to a contractor arises only from the design professional's contract with the owner."  *Id.*  The Court concludes, however, that the proposed Second Amended Complaint adequately pleads a claim for common-law tort.

Under Mississippi law, a negligence plaintiff "must first prove the existence of a duty," and "[w]hether a duty exists in a negligence case is a question of law to be determined by the court."  *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 244 (5th Cir. 2012) (applying Mississippi law) (internal quotation marks and citations omitted).  The question here is the duty an engineer owes to a third party, *i.e.*, someone other than the party with whom the engineer contracted.

The Mississippi Supreme Court examined this issue in *Magnolia Construction Co., Inc. v. Mississippi Gulf South Engineers, Inc.*, where a contractor (Magnolia) sued the project engineer (Gulf South) seeking to recover funds it spent to correct mistakes allegedly caused by the engineer's negligence.  518 So. 2d 1194 (Miss. 1988).  Although Magnolia and Gulf South had no contract, Magnolia claimed that Gulf South was inspecting its performance at the work site and therefore its conduct created a duty to perform in a non-negligent way.  *Id.* at 1196.  Magnolia further claimed that Gulf South's contract with the City of Hattiesburg created an obligation to inspect the work, thereby establishing a common law duty to Magnolia.

The key issue before the court was whether Gulf South owed Magnolia any duties, a point for which the court found a question of fact. In reaching that holding, the court suggested that an engineer can assume extra-contractual duties to a third party through its conduct. *See Magnolia Constr.*, 518 So. 2d at 1201; *see also Casas v. U.S. Joiner, LLC*, 372 F. App'x 440, 442 (5th Cir. 2010) ("A party can assume a duty by conduct where none otherwise exists." (applying Mississippi law and citing *Magnolia Constr.*, 518 So. 2d at 1201)).

Regardless, *Magnolia Construction* clearly holds that an engineer can be liable in tort to a third party that is injured by the engineer's negligent performance of its contractual obligations. *Magnolia Constr.*, 518 So. 2d at 1202. "'By entering into a contract with A, the defendant may place himself in such a relation to B that the law will impose upon him an obligation, *sounding in tort* and not in contract, to act in such a way that B will not be injured.'" *Id*. (emphasis added) (citing W. Page Keeton, *Prosser and Keeton on Torts* § 93 (5th ed. 1984)). In other words, when the engineer accepts a contractual duty to perform a task, it must do so in a way that does not cause foreseeable injury to a third party.

In this case, it appears that all of the alleged negligence relates to duties HMM undertook as part of its contract with JMAA. *See* Second Am. Compl. [35-2] at ¶¶ 10, 12–17, 20, 21, 23, 25, 26, 27, 29, 30, 36–40. And as such, Rifenburg has sufficiently pleaded a common-law tort. *Magnolia Constr.*, 518 at 1202 (examining whether alleged negligence occurred within scope of contractual duties).

Finally, even if HMM is correct that Rifenburg must show a breach of contract to recover, the contract between JMAA and HMM required that HMM perform its services "in a manner consistent with the degree of care and skill exercised by members of the same profession

practicing under similar circumstances"—*i.e.*, not negligently.  JMAA/HMM Contract [30-2] ¶ 5.1.3; *see* Am. Compl. [18] ¶ 10; Pl.'s Mem. [28] at 8–9.  The Court must accept the truth of the factual averments under Rule 12(b)(6).  Those averments—all of which appear related to HMM's contractual obligations—advance a claim for conduct falling below the requisite degree of care.  Rifenburg has therefore stated a claim upon which relief may be granted.

III.     Conclusion

The Court has considered all of the parties' arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Plaintiff's Motion to Amend [35] is granted and Plaintiff is directed to separately file its Second Amended Complaint [35-2] within seven days of the entry of this Order.  Defendants' Motion to Compel Arbitration [30] and Defendants' Motion to Dismiss [20] are denied.  The parties are directed to contact the office of Magistrate Judge F. Keith Ball within ten days to have the case set for a case management conference.

**SO ORDERED AND ADJUDGED** this the 13th day of September, 2013.

                                    s/ *Daniel P. Jordan III*
                                    UNITED STATES DISTRICT JUDGE