UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RIFENBURG CONSTRUCTION, INC.                                                         PLAINTIFF

v.                                                            CIVIL ACTION NO. 3:12cv813-DPJ-FKB

HATCH MOTT MCDONALD, LLC, et al.                                              DEFENDANTS

AMENDED ORDER

This construction-related negligence dispute is before the Court on Defendants' Joint Motion for Summary Judgment [148] pursuant to Federal Rule of Civil Procedure 56.  Because Plaintiff Rifenburg Construction, Inc.'s contract with the Jackson Municipal Airport Authority ("JMAA") bars its claims, the motion is granted.  As a result, Rifenburg's claims, as well as the Third-Party Complaint [46], are dismissed with prejudice.

I.      Facts and Procedural History

On July 24, 2009, Defendant Hatch Mott MacDonald Florida, LLC (collectively with Defendants Hatch Mott MacDonald, LLC, Curtis M. Wright, and Heath Jenkins, "HMM"), entered into a contract with JMAA as the engineer for a runway-rehabilitation project at Jackson-Medgar Wiley Evers International Airport.  HMM Contract [49-2].  Subsequently, on August 16, 2010, JMAA hired Rifenburg as general contractor for the same project.  Rifenburg/JMAA Contract [49-1].[1]

On December 15, 2011, due to delays in construction caused by defects in the asphalt mix used on the project, JMAA terminated Rifenburg's contract for default.  Letter [148-4].

---

[1]Because the parties at times provided only portions of the relevant contracts, the Court cites to attachments to both the motion for summary judgment and the TAC, as appropriate.  However, these attachments are all parts of the same two contracts relevant to this dispute, the Rifenburg/JMAA Contract and the HMM Contract.

Rifenburg filed a demand for arbitration against JMAA, and the parties ultimately settled, with Rifenburg paying damages to JMAA. Settlement Agreement [148-7].

On December 4, 2012, Rifenburg filed suit in this action against Hatch Mott MacDonald, LLC; Curtis M. Wright, the principal project manager for the JMAA project; and Heath Jenkins, the project engineer for the JMAA project. Compl. [1]. Rifenburg claimed in its initial complaint that Hatch Mott MacDonald, LLC, Wright, and Jenkins were negligent in setting the specifications for the asphalt mix and that they negligently misrepresented the adequacy of the specified mix for the project. *See generally id.* After several motions to dismiss and to amend, Rifenburg filed its Third Amended Complaint ("TAC") [49], adding Hatch Mott MacDonald Florida, LLC, as a defendant. The TAC also beefed up the factual averments and included assertions that HMM improperly recommended that JMAA reject Rifenburg's work. *Id.* ¶ 21. Following discovery, Defendants filed the instant Motion for Summary Judgment [148].[2] Rifenburg responded [178], and Defendants replied [184]. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

---

[2]Hatch Mott MacDonald, LLC, Wright, and Jenkins filed a Third-Party Complaint [46] against Burns Cooley Dennis, Inc., for indemnification of any damages arising from this action. All those parties, along with Hatch Mott MacDonald Florida, LLC, jointly filed the present motion. For simplicity, the Court will refer to all collectively as "Defendants."

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments do not constitute an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam).

III.  Analysis

Though Defendants urge several grounds for dismissal, all but one of them flow from General Provision 70-17 ("GP 70-17") of the Rifenburg/JMAA Contract.  That provision states as follows:

> In carrying out any of the contract provisions or in exercising any power or authority granted to him by this contract, there shall be no liability upon the Engineer, his/her authorized representatives, or any officials of the Owner either

> personally or as an official of the Owner.  It is understood that in such matters they act solely as agents and representatives of the Owner.

Rifenburg/JMAA Contract [148-1] at 4.  Defendants' arguments with respect to this provision overlap to some extent, but the Court will focus on HMM's claimed rights as a third-party beneficiary to the Rifenburg/JMAA Contract.

Rifenburg resists this argument, contending that GP 70-17 is inapplicable because:  (1) Rifenburg and JMAA subsequently voided the contract in their Settlement Agreement; (2) HMM waived all defenses based on GP 70-17; (3) GP 70-17 is unenforceable because it was never negotiated; (4) GP 70-17 fails to reach Rifenburg's claims; and (5) HMM is not an intended third-party beneficiary.  The Court takes each issue in turn.

A.     Whether Rifenburg and JMAA Voided Their Contract

Rifenburg contends that all arguments premised on GP 70-17 must fail because a subsequent settlement agreement between Rifenburg and JMAA voided the Rifenburg/JMAA Contract containing GP 70-17.  Pl.'s Mem. [169] at 9–11.  As Rifenburg correctly notes, its Settlement Agreement with JMAA included the following merger clause:  "This Agreement contains the entire understanding and agreement of the parties hereto.  All other oral or written agreements made prior to this Agreement relating to the matters set forth herein are declared null and void."  *Id.* at 5 (emphasis deleted) (citing Settlement Agreement [148-7] at 7).  Based on this language, Rifenburg contends that "Paragraph 70-17 [of the previously signed construction contract] is no longer binding."  *Id.* at 9.

Rifenburg supports its position with general authority on contract construction, but it fails to consider any authority interpreting merger clauses specifically.  As interpreted in Mississippi

(and elsewhere), standard merger clauses like this are a means to solidify the parol-evidence rule. As stated by the Mississippi Supreme Court in *Grand Legacy, LLP v. Gant*, "[M]erger clauses are used 'to signal to the courts that the parties agree that the contract is to be considered completely integrated. . . . [T]hus the purpose and effect of including a merger clause is to preclude the subsequent introduction of evidence of preliminary negotiations . . . .'" 66 So. 3d 137, 145 (Miss. 2011) (en banc) (second, third, and fourth alterations in original) (quoting *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 490 (Miss. 2005); *see also* 17A Am. Jur. 2d *Contracts* § 388 ("A 'merger clause' is often used in contracts to merge prior discussions, negotiations, and representations into the written document and avoid litigation over the question of whether there were oral representations made outside the written agreement.").

Significantly, merger clauses are not generally interpreted as voiding previously existing contracts that are not part of the negotiated bargain memorialized in the subsequent agreement. This point was explored in *B.C. Rogers Poultry, Inc. v. Wedgeworth*, where the parties had entered a series of contracts for processing poultry. 911 So. 2d at 485–86. One of those agreements included an arbitration provision and a merger clause similar to the one here. *Id.* at 489 ("This Agreement constitutes the entire agreement between the parties hereto, replacing and superseding any and all prior oral or written agreements between the parties . . . ."). Though the dissent argued that the merger provision voided the prior production contracts, the majority rejected that contention. *Id.* at 489–90. After noting the traditional use of these clauses, the majority refused to find that disputes under prior production contracts were subject to the arbitration provision found in the subsequent contract containing the merger clause. *Id.*

5

Applying the merger clause to void the Rifenburg/JMAA Contract is even more tenuous. Whereas in *Wedgeworth* the successive contracts covered essentially the same duties (*i.e.*, the agreement to provide poultry for a price), the two contracts here address entirely different bargains—one for construction work and the other to settle disputed claims. The parties made other arguments on this point, but after considering all arguments, the Court finds nothing in the Settlement Agreement suggesting an intent to expand the merger clause beyond its well-recognized and routine purpose.[3]

B.   Whether HMM Waived its Arguments

Defendants generally assert that Rifenburg must be held to GP 70-17 based on waiver, estoppel, election of remedies, and HMM's rights as a third-party beneficiary. But Rifenburg contends that HMM waived these defenses by failing to sufficiently plead them in its answer to the TAC. Federal Rule of Civil Procedure 8(c)(1) provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including[,]" among others, estoppel, release, and waiver.

> Generally, under Rule 8(c) affirmative defenses must be raised in the first responsive pleading. However, "[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal." An affirmative defense is not waived if the defendant "raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond."

---

[3]For example, Rifenburg points out that its Settlement Agreement with JMAA reserved "all claims and causes of action of any kind or character it may have, if any, against" HMM. Settlement Agreement [148-7] at 4. But as Defendants observe, the "if any" language fails to reflect a meeting of the minds that the Rifenburg/JMAA Contract or GP 70-17 was void. Defs.' Reply [184] at 9. The provision merely acknowledges that Rifenburg did not settle any potential claims "it may have" as to HMM by signing the Settlement Agreement. *Id.* On the other hand, Defendants suggest that the settlement contemplated the continued existence of the Rifenburg/JMAA Contract.

*Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (alterations in original) (citations omitted).

The Court finds that HMM did not waive its defenses. As stated earlier, the Court will focus on HMM's claimed right to third-party-beneficiary status. That defense might well fall within Rule 8(c)(1)—though not specifically listed—because it is an avoidance. Regardless, HMM's Answer to Rifenburg's TAC includes the following "Second Defense": "Rifenburg's claims for relief are barred by the terms and conditions of the Contract and Specifications for Construction of Runway Pavement Rehabilitation at Jackson-Evers International Airport Between Jackson Municipal Airport Authority ("JMAA") and Rifenburg . . . ." Answer and Affirmative Defenses to Third Am. Compl. [52] at 2. And to the extent the arguments touch on waiver or estoppel, HMM specifically pleaded "the doctrines of waiver and estoppel," in its Sixth Defense. *Id.*

Even if HMM failed to plead these avoidances with sufficient specificity, it raised the defenses in its motion for summary judgment, and Rifenburg has not indicated why that is not a "pragmatically sufficient time." *Pasco*, 566 F.3d at 577. Indeed, Rifenburg has fully briefed and argued all issues addressed in this Order. *Cf. Standard Waste Sys. Ltd. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 398–99 (5th Cir. 2010) (per curiam) (considering an affirmative defense raised in a motion for summary judgment); *Pasco*, 566 F.3d at 577–78 (same); *Giles v. Gen. Electric Co.*, 245 F.3d 474, 491–92 (5th Cir. 2001) (holding that issue asserted in joint pretrial order was offered at pragmatically sufficient time). HMM did not waive its defenses.

    C.    Whether the Contract Provides Immunity

Rifenburg also argues that the plain language of GP 70-17 does not support Defendants' interpretation.

> The Mississippi Supreme Court has set out a three-tiered approach for interpreting contracts. First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. If the language used in the contract is clear and unambiguous, the intent of the contract must be realized. On the other hand, if the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." If the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. However, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence.

*Dixie S. Indus. Coating, Inc. v. Miss. Power Co.*, 872 So. 2d 769, 772 (Miss. Ct. App. 2004) (en banc) (citations omitted). Nevertheless, "'the mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law.'" *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001) (alteration deleted) (quoting *Cherry v. Anthony*, 501 So. 2d 416, 419 (Miss. 1987)).

By signing the Rifenburg/JMAA Contract with GP 70-17, Rifenburg agreed that "there shall be no liability upon the Engineer" "[i]n carrying out any of the contract provisions or in exercising any power or authority granted to him by this contract." [148-1] at 4. There is no dispute that the contract specifically designates HMM as "the Engineer." *Id.* at 1, 3. And Rifenburg seems to accept that it covers HMM. Rifenburg argues instead that GP 70-17 does not bar its claims for two primary reasons: (1) GP 70-17 fails to reach Rifenburg's specific claims; and (2) GP 70-17 conflicts with provisions in HMM's Contract with JMAA. Neither argument is persuasive.

1.      Whether GP 70-17 Reaches Rifenburg's Claims

Rifenburg asserts that GP 70-17 only reaches "the Engineer's duties and authorities carried out under 'this contract' and does not reach claims outside 'this contract' nor does it expressly waive tort claims.'" Pl.'s Mem. [169] at 18.  Later, Rifenburg states that "by its terms, [GP 70-17] only applied to actions arising from and grounded in the Rifenburg/JMAA contract.  This case contains no such claims." *Id.* at 19.  As discussed below, these conclusory statements are not sufficient to defeat summary judgment.  *See TIG Ins. Co.*, 276 F.3d at 759.

GP 70-17 speaks in broad terms.  It states that "there shall be *no liability* upon [HMM]" for "carrying out any of the contract provisions or in exercising any power or authority granted to [it] by this contract."  Rifenburg/JMAA Contract [148-1] at 4 (emphasis added).  The plain reading of the phrase "no liability" cannot be reasonably limited to contract claims.

Moreover, Rifenburg has not shown that HMM's disputed acts were performed outside the "power or authority granted to [it] by this contract." *Id.*  Article 5 of the Rifenburg/JMAA Contract expressly identifies the Engineer's (*i.e.*, HMM's) powers and authority, including, but not limited to, "provid[ing] administration of the Contract," "determin[ing] the progress and quality of the completed Work," and "hav[ing] authority to reject" Rifenburg's work that it finds insufficient.  Rifenburg/JMAA Contract [49-1] at 5.  Rifenburg never mentions Article 5, never addresses any of HMM's express powers under the contract, and never offers record evidence— or even argument—explaining why its claims fall beyond the powers found in its contract with JMAA.  Rifenburg must go beyond the pleadings and "articulate the precise manner in which the

submitted or identified evidence supports [its] claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). Rifenburg has not done so.[4]

### 2. Conflict with HMM's Contract

Rifenburg's second contract-based argument relies on General Provision 20.1 to the HMM Contract, which provides that HMM "shall at no time act as agent for JMAA." HMM Contract [148-2] at 20. Rifenburg contends that this provision in HMM's contract conflicts with GP 70-17 of the Rifenburg/JMAA Contract, which states that the "Engineer," *i.e.*, HMM, "act[s] solely as agent[] and representative[] of [JMAA]" in executing its duties under the contract. Rifenburg/JMAA Contract [148-1] at 4.

Viewing the Rifenburg/JMAA Contract as a whole, the Court finds no ambiguity that HMM is immune from suit by Rifenburg. That intent remains clear even if GP 20.1 of the HMM Contract is construed together with the *subsequently* drafted Rifenburg/JMAA Contract. The reference to agency status in GP 70-17 merely bolsters HMM's right to immunity. Even without it, the clear and unambiguous language and intent of GP 70-17 remains clear that "there shall be *no liability* upon [HMM]." *Id.* (emphasis added).

And assuming without deciding that the two contracts should be read in tandem, their provisions can be read harmoniously: even if JMAA did not grant HMM any actual authority as an agent under the HMM Contract, in the subsequent contract with Rifenburg, HMM clearly

---

[4]In a prior ruling, this Court denied a motion to dismiss in which HMM claimed that it could not be held liable in tort. The Court observed, "[I]t appears that all of the alleged negligence relates to duties HMM undertook as part of its contract with JMAA." Sept. 13, 2013 Order [40] at 8. That ruling remains valid but addressed a different issue the parties disputed at that time—whether an engineer can be held liable to a third party. The issue today is whether Rifenburg seeks recovery for acts HMM took while carrying out the power and authority addressed in Rifenburg's contract with JMAA.

acted as JMAA's agent under Article 5 of the Rifenburg/JMAA Contract and was intended to enjoy immunity from suit for those acts. This interpretation is both consistent with the contracts' plain language and JMAA's desire to shield its engineer from liability.

Finally, this construction also coincides with other provisions of the two contracts. For example, the HMM Contract required HMM to indemnify JMAA for any liability flowing from its negligence. HMM Contract [148-2] at 17. And the Rifenburg/JMAA Contract required Rifenburg to pursue claims against JMAA in arbitration while precluding claims against HMM. Rifenburg/JMAA Contract [49-1] at 21; Rifenburg/JMAA Contract [148-1] at 4. Thus, Rifenburg could assert arbitration claims against JMAA based on HMM's alleged negligence while acting as JMAA's agent under the Rifenburg/JMAA Contract, and JMAA would then have the right to seek indemnity from HMM. Indeed Rifenburg did pursue arbitration for those alleged acts and ultimately released all claims against JMAA "related to the asphalt placed by RCI" pursuant to the Rifenburg/JMAA Contract. Settlement Agreement [148-7] at 3. Precluding Rifenburg's claims against HMM fits neatly within this overall framework.

D. Whether a Question of Fact Exists Regarding GP 70-17

Rifenburg seeks to avoid GP 70-17 because it was buried deep in a lengthy contract and was not negotiated between JMAA and Rifenburg, and because Rifenburg apparently never read it. Normally these arguments would be non-starters. "It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it" and is "charged with knowing the contents of any document that he executes." *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1056 (Miss. 2004) (internal quotation marks omitted).

11

But an exception exists in Mississippi for certain agreements limiting liability. As Rifenburg notes, "[c]lauses that limit liability are given strict scrutiny by [the Mississippi Supreme Court] and are not to be enforced unless the limitation is fairly and honestly negotiated and understood by both parties." *Quinn v. Miss. State Univ.*, 720 So. 2d 843, 851 (Miss. 1998) (en banc), *overruled on other grounds by City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So. 2d 703 (Miss. 2005). Read broadly, this language could indicate that Rifenburg's failure to read its own contract voids its contractual duties. But as discussed next, the Mississippi Supreme Court has not given this rule such broad application.

The Mississippi Supreme Court considered this issue in *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748 (Miss. 2003) (en banc), where a party to a settlement agreement invoked the release provision as a defense to subsequent litigation. The court acknowledged the general rule that releases are not "enforced unless the limitation is fairly and honestly negotiated and understood by both parties." *Id.* at 754. But in the next paragraph it noted the contrary rule that "'every person must be presumed to know the law, and in absence of some misrepresentation, or illegal concealment of facts, the person must abide the consequences of his contracts and actions.'" *Id.* (alteration deleted) (quoting *Farragut v. Massey*, 612 So. 2d 325, 329 (Miss. 1992)).

Recognizing the potential tension between these general rules, the *Royer Homes* court surveyed Mississippi authority and observed that fact questions were found when parties challenged contract validity but that "the Court upheld the application of releases in cases where fraud or misrepresentation was not an issue." *Id.* at 756. Quoting one such case, the court observed:

> [T]his Court has been liberal in reviewing the transactions where one party might have the advantage over another party in experience, knowledge, and wisdom; but in the absence of fraud, deceit, or fiduciary relations of some kind, the court cannot relieve a person from the consequence of his acts merely because he has not acted prudently or diligently about his contracts or other matters.

*Id.* at 757 (quoting *Pearson v. Weaver*, 173 So. 2d 666, 669 (Miss. 1965)).  The *Royer Homes* court then concluded: "What all the cases make clear is that where there are allegations made as to the validity of a release due to fraud, misrepresentation, adhesion or other inequities then the case properly goes to the jury or fact finder." *Id.* And because no such allegations existed in *Royer Homes*, the court affirmed summary judgment and held the parties to the written terms of their unambiguous contract.

The contours of this distinction are apparent when comparing *Royer Homes* to *Whitehead v. Johnson*, 797 So. 2d 317 (Miss. Ct. App. 2001) (en banc), a Mississippi Court of Appeals case from which *Royer Homes* borrows much of its analysis and key language.  Unlike the plaintiff in *Royer Homes*, the *Whitehead* plaintiff contended that the release was procured by fraud or misrepresentation.  *Id.* at 324.  The court therefore found a question of fact and reversed summary judgment.  *Id.*[5]

Courts applying *Royer Homes* have generally maintained the distinction between claims attacking the validity of the contract and those that do not.  For example, in *Whitaker v. T & M Foods, Ltd.*, the Mississippi Supreme Court held:

> [T]he Whitakers released Kent from liability, absent proof to satisfy traditional principles for setting aside a release.  Every person must be presumed to know the law, and in [the] absence of some misrepresentation, or illegal concealment of

---

[5]Even under these facts, the dissent, joined by Judge Leslie Southwick, concluded that the plaintiff could not be "'heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.'" *Id.* at 325 (McMillin, C.J., dissenting).

> facts, the person must abide the consequences of his contracts and actions. . . . Should the trial court be satisfied that the Whitakers have provided sufficient evidence to raise factual questions regarding mutual mistake or fraud, misrepresentation, adhesion or other inequities[,] then the case properly goes to the jury or fact finder.

7 So. 3d 893, 899–900 (Miss. 2009) (en banc) (alterations in original) (internal quotation marks omitted); *see also Scott v. Gammons*, 985 So. 2d 872, 875 (Miss. Ct. App. 2008) ("The releases executed by the Scotts constituted valid contracts, and the Scotts do not allege fraud or misrepresentation in the formation of the contracts. Since the validity of the contracts are not disputed, we must look to the 'four corners' of the contracts to determine the intent of the parties.").[6]

Finally, the Fifth Circuit examined this same body of law in *Brown v. Johnson* and reached the same conclusion: "Although Mississippi law generally adheres to the principle that a party is charged with knowledge of the terms of a contract that he signed, the state's courts have recognized exceptions for releases procured under circumstances evidencing bad faith, disparity in bargaining power, coercion, duress, or other inequities." 329 F. App'x 537, 539 (5th Cir. 2009) (per curiam) (citation omitted) (discussing, among other cases, *Royer Homes*, 857 So. 2d at 757). In *Brown*, the Fifth Circuit found cause to invoke the exception because the plaintiffs were "slightly educated foreigners" who, under duress of mounting medical bills, signed a release while still on medication and feeling "nervous and shaky" from the accident. *Id.* at 540.

The present case presents a far different picture. To begin, Rifenburg is a corporation that signed an arm's length agreement to perform work within its field. *Cf., e.g., Alexander v. Myers*,

---

[6]Though many of these cases, like *Royer Homes*, arise in the settlement-agreement context, the same analysis has been applied to other contracts that agree to limit liability. *See, e.g., Quinn*, 720 So. 2d at 851.

219 So. 2d 160, 162 (Miss. 1969) (finding fact question where plaintiff had a sixth-grade education, among other factors). And there is no indication that the contract was signed under duress as in *Brown*. *Cf.* 329 F. App'x at 540. Most significantly, there is no allegation that the contract (or GP 70-17) was procured by fraud or misrepresentation. *Compare Royer Homes*, 857 So. 2d at 757 (holding parties to contract as written absent proof of fraud or misrepresentation), *and Scott*, 985 So. 2d at 875 (looking to "four corners" "[s]ince the validity of the contracts are not disputed"), *with Tate v. Robinson*, 78 So. 2d 461, 462 (Miss. 1955) (finding question of fact as to whether released party misrepresented the terms of agreement with plaintiff who was paid $25 after being "crippled for life").

While Rifenburg notes that GP 70-17 was found deep in the Rifenburg/JMAA Contract, there is no suggestion that JMAA somehow attempted to hide it or misrepresent the nature of the agreement. Yes, the contract was long, but the length was due in part to hundreds of general provisions—including GP 70-17—that JMAA was required to include under federal law. FAA Advisory Circular Nos. 150/5370-10D and 10E provide standards for constructing airports. *See* Fed. Aviation Admin., Advisory Circular No. 150/5370-10D, Standards for Specifying Construction of Airports (2008), *available at* http://www.faa.gov/documentlibrary/media/advisory_circular/150-5370-10d/150_5370_10d.pdf ("10D Circular"); Fed. Aviation Admin., Advisory Circular No. 150/5370-10E, Standards for Specifying Construction of Airports (2009), *available at* http://www.faa.gov/documentlibrary/media/advisory_circular/150-5370-10e/150_5370_10e.pdf ("10E Circular") (of which the Court takes judicial notice). These circulars explain that "use of these guidelines is mandatory for airport construction funded under the Airport Improvement Program (AIP)." 10D Circular at 1. There is no dispute that the

subject project was AIP funded. And GP 70-17 appears in the Rifenburg/JMAA Contract exactly as worded—and numbered—in the voluminous FAA standards that the parties were required to, and knowingly did, include in their contract. JMAA did not attempt to hide GP 70-17 by burying it deep within a lengthy document.[7]

Finally, the Court finds no "other inequities" that might preclude HMM from asserting GP 70-17. First, as stated above, Rifenburg was not left without recourse—it could (and did) pursue arbitration against JMAA. Second, Rifenburg acknowledged its duty to read the contract it signed. For example, the instructions to bidders were incorporated into the contract, *see* Rifenburg/JMAA Contract [49-1] at 27, and included the following in Section 4:

> Responsibilities of Bidder. . . .  Bidder shall also thoroughly examine the Bid Documents, and other related documents, including without limitation all Addenda, to be informed of any and all conditions and requirements that may in any manner affect the Work. Failure to do so will not relieve Contractor of its obligation to perform the Work in accordance with the Agreement.

Section 6 provided:

> Representations of Bidder. Each Bidder shall judge for itself *all conditions* and circumstances relative to its Bid. Each Bidder, by submitting a bid, represents that (I) it has *read and understands* the Bid Documents and Contract Documents, . . . and (v) it *agrees* to execute the Agreement in the form attached hereto as Exhibit F.

Rifenburg/JMAA Contract [178-4] at 15 (emphasis added). And the Bid Proposal Form Rifenburg signed further provided:

> Pursuant to published notice by JMAA of its intent to receive Bids for the right and privilege of performing the Work, the undersigned hereby submits its Bid to perform the Work based on and subject to the terms, provisions and conditions

---

[7]The parties have not addressed whether voiding GP 70-17 would raise preemption issues. But because the provision should stand under Mississippi law, the Court will not address those potential concerns.

>  contained in the Bid Documents, *all of which documents have been read by the undersigned and to which the undersigned agrees* . . . .

*Id.* at 22 (emphasis added).  Of course, Rifenburg had a duty under Mississippi law to read its contract.  *Terminix Int'l*, 904 So. 2d at 1056.  Under these circumstances, equity does not favor allowing Rifenburg to avoid GP 70-17 simply because it did not read or negotiate it.[8]

>  E. Third-Party Beneficiary

Finally, the parties dispute whether HMM has any vested rights as a third-party beneficiary to the Rifenburg/JMMA Contract.

> (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Simmons Hous., Inc. v. Shelton ex rel. Shelton*, 36 So. 3d 1283, 1286 (Miss. 2010) (quoting *Yazoo & M.V.R. Co. v. Sideboard*, 133 So. 669, 671 (Miss. 1931)).  For the same reasons that GP 70-17 forecloses Rifenburg's ability to seek damages from HMM, this provision also establishes HMM's vested rights as a third-party beneficiary.  The contract specifically defines HMM as the "Engineer," and the "Engineer" is explicitly exempted from liability by GP 70-17.  *See* Rifenburg/JMAA Contract [148-1] at 1, 3, 4.  Thus, HMM satisfies the first two elements.  And,

---

[8]Perhaps the best argument for Rifenburg would be that this was a contract of adhesion.  But even assuming it was, "finding a contract to be one of adhesion does not automatically mean that the contract or any provision thereof is substantively unconscionable.  So, regardless, we must look to the agreement's terms to determine if they are oppressive." *Smith v. Express Check Advance of Miss., LLC*, 153 So. 3d 601, 608 (Miss. 2014) (en banc) (footnote and internal quotation marks omitted).  They were not because: (1) Rifenburg is a sophisticated corporation; (2) the provision was required by federal law; and (3) Rifenburg was not without recourse for any losses (it could—and did—pursue these claims in arbitration against JMAA).  If Rifenburg did not want to sign the contract, it could have passed on the work.

17

as explained above, JMAA had a "substantial and articulate interest in the welfare of" HMM—namely, that it be shielded from liability in exchange for completing work. JMAA's interest is also demonstrated by FAA Advisory Circular Nos. 150/5370-10D and 10E.

Rifenburg argues, however, that JMAA had no intent to protect HMM or create any third-party beneficiaries. To support the argument, Rifenburg cites the "Third Party Beneficiary Clause," found in General Provision 70-12. That provision states as follows:

> THIRD PARTY BENEFICIARY CLAUSE. It is specifically agreed between the parties executing the contract that it is not intended by any of the provisions of any part of the contract to create [sic] the public or any member thereof a third party beneficiary or to authorize anyone not a party to the contract to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of the contract.

Rifenburg/JMAA Contract [178-8] at 11.

Again, the Court finds Rifenburg's construction unreasonable. GP 70-12 precludes third-party-beneficiary status for "the public or any member thereof." *Id.* HMM was not merely a "member" of the public; it was the designated "Engineer" for the project for whom the contract provides certain powers and tangible benefits. Construing GP 70-12 to mean that HMM was a member of the general public precluded from third-party-beneficiary status unnecessarily frustrates the clear intent to immunize it. Finally, "specific language controls over general inconsistent language in a contract." *Union Planters Bank, Nat'l Ass'n v. Rogers*, 912 So. 2d 116, 120 (Miss. 2005) (en banc). So even assuming the provisions conflict, which they do not, the Court finds that GP 70-17 controls in this situation. HMM is an intended third-party beneficiary to the Rifenburg contract and entitled to enforce its provisions.

IV.	Conclusion

The Court has considered the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendants' Joint Motion for Summary Judgment [148] is granted, and Rifenburg's claims, as well as the Third-Party Complaint [46], are dismissed with prejudice. The remaining Motions [167, 176, 193] are terminated as moot.

A separate final judgment will be entered in this action in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 19th day of May, 2015.

           s/ *Daniel P. Jordan III*
           UNITED STATES DISTRICT JUDGE